FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 28, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GREG SCOTT ANDREWS,<br><br>               Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>               Defendant. | No. 2:17-cv-00038-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 18, 25 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 18, 25. The parties consented to proceed before a magistrate judge. ECF No. 9. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court

ORDER - 1

denies Plaintiff's motion (ECF No. 18) and grants Defendant's motion (ECF No. 25).[1]

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a

_____

[1] Defendant's Motion fails to comply with Local Rule 10.1(a)(2) requiring double-spaced footnotes, thereby circumventing the length restrictions set forth in Local Rule 7.1. Defense counsel is to ensure that future filings comply with this rule as this continued practice may result in subsequent filings being stricken.

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

a person from engaging in substantial gainful activity. 20 C.F.R. §
416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the
enumerated impairments, the Commissioner must find the claimant disabled and
award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the
severity of the enumerated impairments, the Commissioner must pause to assess
the claimant's "residual functional capacity." Residual functional capacity (RFC),
defined generally as the claimant's ability to perform physical and mental work
activities on a sustained basis despite his or her limitations, 20 C.F.R. §
416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's
RFC, the claimant is capable of performing work that he or she has performed in
the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is
capable of performing past relevant work, the Commissioner must find that the
claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of
performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's
RFC, the claimant is capable of performing other work in the national economy.
20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner
must also consider vocational factors such as the claimant's age, education and

past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed an application for Title XVI supplemental security income benefits on September 5, 2012, alleging an amended onset date of September 15, 2012.  Tr. 277-82.  The application was denied initially, Tr. 175-82, and on reconsideration, Tr. 184-90.  Plaintiff appeared *pro se* at a hearing before an administrative law judge (ALJ) on January 30, 2015.  Tr. 49-63.  Plaintiff appeared with counsel at supplemental hearings on June 12, 2015, Tr. 64-98, and September 11, 2015, Tr. 99-149.  On October 8, 2015, the ALJ denied Plaintiff's claim.  Tr. 27-42.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 5, 2012. Tr. 29. At step two, the ALJ found Plaintiff has the following severe impairments: obesity; coronary artery disease back problems described as degenerative arthritis and degenerative disc disease of the cervical spine, lumbar spine degenerative disc disease, and thoracic spondylosis; and mental impairments described as generalized anxiety disorder without agoraphobia, cannabis use, and polysubstance use. Tr. 29. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 30. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [T]he claimant can sit for six hours in an eight-hour workday; stand and walk six hours total in any combination in an eight-hour workday with normal breaks; can lift and carry 20 pounds occasionally and 10 pounds frequently. He can occasionally push or pull arm or leg controls within the weight limitations given; can occasionally stoop, crouch, kneel, crawl, and balance; can occasionally climb ramps or stairs; cannot climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to heavy industrial vibrations; no unprotected heights; should avoid concentrated exposure to hazardous machinery, and extreme cold or heat. He can occasionally reach overhead with the right upper extremity; can frequently reach in all other directions within 18 inches of the body with the right upper extremity; and can occasionally reach in all other directions outside of 18 inches of the body with the right upper extremity. The claimant would need a job where he is around co-workers and the general public; no job where he would be completely isolated; and no job that would be considered claustrophobic in nature.

Tr. 32.

ORDER - 7

At step four, the ALJ found Plaintiff is able to perform past relevant work as a fast foods worker. Tr. 40. Alternatively, at step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as barista, cashier, and ticket seller. Tr. 41. On November 25, 2016, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom complaints;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ's RFC finding is supported by substantial evidence; and

4. Whether the ALJ properly considered the Medical Vocational Guidelines at step five.

ECF No. 18 at 1-2.

ORDER - 8

## DISCUSSION

### A. Plaintiff's Symptom Testimony

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 18 at 10-14. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina,* 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue,* 572 F.3d 586, 591(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater,* 81

F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas,* 278 F.3d at 958-59.

The ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the severity of his symptoms was not entirely credible. Tr. 33.

### 1. Improvement with Treatment

First, the ALJ found that Plaintiff's symptom complaints were inconsistent with Plaintiff's improvement with treatment. Tr. 34. The effectiveness of medication and treatment is a relevant factor in determining the severity of a

claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Plaintiff testified to severe limitations from chest pain due to his December 2011 heart attack. Tr. 127, 132. However, the ALJ noted Plaintiff's heart condition had improved significantly since his urgent care in 2011 and subsequent treatment. Tr. 34. Plaintiff's December 2011 cardiac surgery was successful. Tr. 449-50. After the surgery, Plaintiff showed significant improvement in cardiac function. Tr. 501, 504. Dr. Panek also testified that Plaintiff's cardiac impairment had resolved by September 2012. Tr. 55-56. The ALJ reasonably concluded that Plaintiff's improvement following surgery indicated Plaintiff's symptoms were not as severe as alleged. Tr. 34. This was a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 2. Conservative Treatment

Second, the ALJ found Plaintiff's record of conservative treatment for his symptoms was inconsistent with the level of impairment alleged. Tr. 34, 36-37. When a claimant receives only conservative or minimal treatment, it supports an

ORDER - 11

adverse inference as to the claimant's credibility regarding the severity of his subjective symptoms. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). Additionally, unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, the ALJ noted that Plaintiff's medical conditions did not require significant medical treatment, and the medical record does not show an increased frequency of treatment, epidural injections, medical branch blocks, use of a TENS unit, physical therapy, brace usage, walker usage, wheelchair usage, pain management, frequent emergency room visits, recent inpatient hospitalization, specialist care, or surgery, the type of treatment recommendations one expects for a person who is suffering from disabling medical conditions. Tr. 36. Moreover, the ALJ noted instances where Plaintiff followed a conservative treatment plan. Tr. 34, 36-37. For example, Plaintiff testified to disabling chest, back, hip, and arm pain on a daily basis. Tr. 127-32. However, Plaintiff testified that he takes no prescription pain medication. Tr. 129. Plaintiff then clarified that he takes an expired prescription for Motrin 800s. *Id.* The ALJ reasonably concluded that Plaintiff's conservative treatment and failure to seek active prescription medication management indicated Plaintiff's pain was not as severe as alleged. Tr. 34.

Of the potential aggressive treatments identified by the ALJ, Plaintiff's medical providers only referred him to physical therapy. *See* Tr. 610-11, 765-86. Plaintiff argues he did not pursue more aggressive care because his insurer would not cover further treatment. ECF No. 18 at 12. Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995); *see* Tr. 140-41, 505-06, 588. However, "[w]here evidence is subject to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Plaintiff testified that he did not take prescription pain medication because he did not "like to do pills." Tr. 129. Plaintiff also testified that he did not continue physical therapy due to pain and because he felt he took no benefit from physical therapy. Tr. 141. Additionally, Plaintiff was offered and agreed to an alternative home therapy program when his insurance would not cover certain treatments. Tr. 615. Plaintiff's own description of his daily activities does not reflect that he followed the recommended home therapy. Tr. 132, 135-36, 308. The ALJ's conclusion that Plaintiff's conservative treatment adequately controlled his symptoms is a rational interpretation of the evidence in the record, so the Court must uphold the ALJ's conclusion. *Burch*, 400 F.3d at 679. Moreover, the ALJ's conclusion that Plaintiff failed to seek more

aggressive treatment was adequately supported by the record.  There were clear

and convincing reasons to discount Plaintiff's symptom testimony.

### 3.  Inconsistent with Medical Evidence

Third, the ALJ found Plaintiff's symptom testimony was inconsistent with

the longitudinal medical record.  Tr. 34-37.  An ALJ may not discredit a claimant's

pain testimony and deny benefits solely because the degree of pain alleged is not

supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 856

(9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v.*

*Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  Medical evidence is a relevant factor,

however, in determining the severity of a claimant's pain and its disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).  Minimal objective evidence is

a factor which may be relied upon in discrediting a claimant's testimony, although

it may not be the only factor.  *See Burch*, 400 F.3d at 680.

Here, the ALJ found Plaintiff's complaints of disabling back pain were

inconsistent with the objective imaging in the record, which showed mild findings

at most.  Tr. 34-35; *see* Tr. 667 (negative shoulder impression), Tr. 668 (mild disc

degeneration).  The ALJ also noted the record did not reveal evidence of "a

significant degree of nerve root compression, cord compression, muscle atrophy,

paravertebral muscle spasm, sensory or motor loss, reflex abnormality, gait

disturbance, or significant reduced range of motion of the spine or joints," nor

"significant radiculopathy, scoliosis, lordosis, disc bulging, herniation, disc protrusion, neural foraminal narrowing, spinal stenosis, spondylosis, arachnoiditis, spondylolisthesis, or other indications of a disabling spine disorder." Tr. 35. Dr. Weeks' examination showed Plaintiff's range of motion was mostly within normal limits, with some limitation in the neck, back, and shoulder; trigger point and swelling in the right shoulder and tenderness in the left spine, but no obvious signs of atrophy or carpal tunnel; and full muscle strength, tone, and bulk. Tr. 760.

Plaintiff counters the ALJ's conclusion by offering evidence of Plaintiff's diagnosis of spinal conditions. ECF No. 18 at 12-13. However, "[t]he mere diagnosis of an impairment … is not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Plaintiff does not establish how these diagnoses indicate Plaintiff is capable of less than light work, as the ALJ concluded. Additionally, Plaintiff notes Dr. Goodman and Mr. Wills also found some decreased range of motion and observed some swelling and tenderness. ECF No. 18 at 12. However, Plaintiff similarly fails to establish how this relatively mild evidence undermines the ALJ's finding. The ALJ's conclusion that the mild objective evidence did not support Plaintiff's severe subjective symptom complaints is a rational interpretation of the evidence, so the Court must uphold the ALJ's finding. *Burch*, 400 F.3d at 679.

ORDER - 15

The ALJ also found the psychiatric evidence of record did not support a finding of disabling psychiatric impairments. Tr. 36-37. Plaintiff described being limited in his functioning by depression, anxiety, and claustrophobia. Tr. 308, 311, 313. However, the ALJ observed that the two consultative psychological examiners observed mild findings. Tr. 36-37; *see* Tr. 533-37, 648-53. The ALJ reasonably determined that the medical record did not support Plaintiff's claim of disabling symptoms.

### 4. *Activities of Daily Living*

Finally, the ALJ concluded Plaintiff's daily activities were inconsistent with the level of impairment alleged. Tr. 36. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn,* 495 F.3d at 639; *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

Here, the ALJ identified several of Plaintiff's daily activities that were inconsistent with his alleged impairments. Tr. 33, 36. Plaintiff reported being able to prepare his own meals and do light housework, including laundry, cleaning dishes, and cleaning his bedroom and bathroom. Tr. 36 (citing Tr. 135, 309, 651). Plaintiff reported walking to the store, Tr. 36 (citing Tr. 130). He reported being fully independent in self-care activities and described doing them daily. Tr. 36 (citing Tr. 534, 650-51). Plaintiff testified that he takes daily walks with his dog, stops to visit his sister and three different neighbors on his daily walks, and would spend six to eight hours per month fishing with his father-in-law. Tr. 33, 36 (citing Tr. 135-37, Tr. 311). Plaintiff also reported sitting and watching television for ten hours per day. Tr. 33 (citing Tr. 132, 135). These activities are inconsistent with Plaintiff's testimony that he was unable to stand or walk for more than fifteen minutes at a time, was unable to sit for more than thirty minutes at a time, and spent only thirteen waking hours a day doing his daily activities. Tr. 129-31. The ALJ reasonably concluded that this testimony was inconsistent with the level of impairment Plaintiff alleged. Tr. 36. This was a clear and convincing reason to discredit Plaintiff's symptom testimony. The ALJ's credibility finding is supported by substantial evidence.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of Judy Panek, M.D.; Steven Goodman, M.D.; Kevin Weeks, D.O.; Myrna Palasi, M.D.; Minh Vu, M.D.; and Jeffrey Wills, P.T.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

### 1. Dr. Panek

Dr. Panek examined the record and testified at the first and second administrative hearings. Tr. 54-61, 69-88. Dr. Panek opined Plaintiff was limited to lifting and carrying twenty pounds occasionally and ten pounds frequently; could stand or walk for a total of up to six hours; could sit for up to six hours per day, could occasionally use arm and leg controls; could occasionally climb ladders, ramps, and stairs; could not climb ladders, ropes, or scaffolds; could occasionally stoop, crouch, kneel, crawl, and balance; could occasionally reach bilaterally; and needed to avoid concentrated exposure to extreme cold, extreme heat, hazardous machinery, unprotected heights, and heavy industrial vibration. The ALJ gave this opinion great weight. Tr. 38.

Plaintiff contends the ALJ erred by giving significant weight to Dr. Panek, a non-examining physician, and partial or little weight to all other medical sources who gave opinions as to Plaintiff's physical limitations. ECF No. 18 at 15. An

ALJ may credit the opinion of nonexamining expert who testifies at hearing and is subject to cross-examination. *See Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (citing *Torres v. Sec'y of H.H.S.,* 870 F.2d 742, 744 (1st Cir. 1989)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and are consistent with it. *Andrews*, 53 F.3d at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

  The ALJ found Dr. Panek had reviewed the longitudinal record, which was not available to other sources in the record. Tr. 38. Additionally, the ALJ noted

that Dr. Panek was subject to cross-examination, lending more weight to her

opinion. *Id.* Plaintiff contends Dr. Panek did not have the benefit of reviewing the

entire record, as the record was supplemented with Dr. Weeks' examination

findings and Plaintiff's physical therapy notes prior to the third hearing. ECF No.

18 at 16; *see* Tr. 67, 101-02. However, Dr. Weeks reviewed many of the same

exhibits Dr. Panek reviewed, and Dr. Weeks also did not review Plaintiff's

physical therapy notes. Tr. 755-57. Dr. Panek also reviewed medical evidence in

the record the Dr. Weeks did not review, including Plaintiff's treatment notes from

Spokane Cardiology, Tr. 673-99, and Plaintiff's treatment notes from Community

Health Association of Spokane between 2012 and 2014, Tr. 558-635. *See* Tr. 70,

755-57. The ALJ reasonably concluded Dr. Panek's review of the record was

more comprehensive than other providers.

Furthermore, the ALJ found Dr. Panek's opinions were supported by

evidence in the record. Tr. 38; *see, e.g.*, Tr. 504 (acute cardiac problems resolved),

667-68 (negative and mild objective imaging results), 758-61 (mild physical

examination findings). Plaintiff argues the ALJ's conclusion was not supported

because Dr. Panek's opinion was "incomplete," as a subsequent consultative

examination was ordered. ECF No. 18 at 16. Plaintiff's argument

mischaracterizes Dr. Panek's testimony about the need for a consultative

examination. At the second administrative hearing, Dr. Panek testified to an RFC

she formulated based on her own review of the record. When asked by Plaintiff's counsel whether Dr. Panek thought Mr. Wills' opined limitation to sedentary work was a "reasonable" opinion, Dr. Panek replied that she would need to see an internist consultative examination before she could give an opinion as to Mr. Wills' opinion. Tr. 84-88. Dr. Panek's testimony about Plaintiff's limitations was not "incomplete," as Plaintiff claims. The ALJ reasonably concluded that Dr. Panek's opinions were supported by evidence in the record.

Plaintiff suggests the ALJ should have credited the opinions of other medical sources over Dr. Panek's opinions. ECF No. 18 at 15-16. However, as discussed *supra* and *infra*, the ALJ provided legally sufficient reasons for giving less weight to the other medical source opinions and for giving more weight to Dr. Panek's opinions.

### 2. Dr. Goodman

Dr. Goodman examined Plaintiff on May 13, 2014, and opined Plaintiff showed no evidence of a cervical radiculopathy and that it was likely Plaintiff's dynamic positional hand paresthesias was secondary to his postural deviation and associated scalene myofascial findings. Tr. 613-15. The ALJ assigned great weight to Dr. Goodman's objective examination findings, but less weight to Dr. Goodman's subjective observations. Tr. 39. The ALJ found Dr. Goodman's subjective findings were entitled to less weight because they were based on a one-

time examination and were inconsistent with the medical evidence as a whole. Tr. 39. An ALJ may not discredit a medical opinion solely because the provider examined the claimant only once. *See* 20 C.F.R. § 416.927(c). However, where a physician's report does not assign any specific limitations or opinions in relation to an ability to work, the ALJ need not provide reasons for rejecting the opinion because "the ALJ did not reject any of [the report's] conclusions." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010); *see also Key*, 754 F.2d at 1549 (the "mere diagnosis of an impairment ... is not sufficient to sustain a finding of disability."). Here, Dr. Goodman's subjective findings concern only medical diagnoses and do not address any functional limitations or opinions regarding Plaintiff's ability to work. Tr. 615. Therefore, the ALJ did not need to provide reasons to reject Dr. Goodman's subjective findings. *Turner*, 613 F.3d at 1223.

   *3. Dr. Weeks*

   Dr. Weeks examined Plaintiff on July 25, 2015, and opined Plaintiff is limited to six hours of standing or walking in an eight-hour workday; six hours of sitting in an eight-hour workday; could frequently climb steps and stairs; could occasionally climb ladders, scaffolds, and ropes; could occasionally stoop, crouch, kneel, and crawl; and could occasionally reach overhead or forward. Tr. 755-62. The ALJ gave this opinion partial weight. Tr. 38. Because Dr. Weeks' opinion

ORDER - 23

was contradicted by Dr. Panek, Tr. 54-61, 69-88, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ discredited Dr. Weeks' opinions on the ground that Dr. Weeks did not have a treatment relationship with Plaintiff and only examined Plaintiff once. Tr. 38. An ALJ may consider the length and nature of a treatment relationship in evaluating a medical opinion, but the ALJ may not discredit a medical opinion solely because the provider examined the claimant only once. *See* 20 C.F.R. § 416.927(c). The Court notes the ALJ's rationale is inconsistent with the ALJ giving great weight to Dr. Panek, who had no treatment relationship with Plaintiff. This was not a specific and legitimate reason to discount the opinion.

Second, the ALJ discredited Dr. Weeks' opinions as being inconsistent with the longitudinal medical evidence. Tr. 38. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. The ALJ identified substantial evidence in the record that supports the ALJ's conclusion that Dr. Weeks' opined limitations were more restrictive than what was supported in the record. Tr. 34-36; *see, e.g.*, Tr. 612 (negative shoulder imaging), Tr. 760 (swollen shoulder shows no signs of atrophy or carpal tunnel syndrome). Plaintiff fails to identify any evidence in the record

ORDER - 24

that undermines the ALJ's conclusion. ECF No. 18 at 16; *see Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm).

Additionally, as discussed *supra*, the ALJ noted Dr. Weeks reviewed less of the record than Dr. Panek, and Dr. Weeks was not subject to cross-examination. Tr. 38.

Even if the ALJ did err in evaluating Dr. Weeks' opinions, the ALJ's error is harmless. A district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). Here, although the ALJ erred in rejecting Dr. Weeks' opinions on the grounds of his lack of a treating relationship with Plaintiff, the ALJ identified other specific and legitimate reasons to discredit Dr. Weeks' opinions. Consequently, the ALJ's error is harmless and not grounds for reversal. *Id.* at 1111.

### 4. Dr. Palasi

Dr. Palasi reviewed the record on August 12, 2012, and opined Plaintiff was limited to sedentary work. Tr. 522. The ALJ gave this opinion little weight. Tr. 39. Because Dr. Palasi's opinion was contradicted by Dr. Panek, Tr. 54-61, 69-88,

the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ found Dr. Palasi's opinion was inconsistent with the medical evidence, both at the time Dr. Palasi rendered the opinion and with Plaintiff's record of subsequent medical treatment. Tr. 39. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Dr. Palasi opined in August 2011 that Plaintiff was limited to sedentary work, based on Plaintiff's history of diverticulitis and heart attack. Tr. 52. However, the ALJ found these impairments did not meet the twelve-month durational requirement for Social Security claims. Tr. 56. Indeed, the ALJ noted the medical evidence showed that these impairments had resolved by September 2012, after Plaintiff's urgent care treatment. *See* Tr. 55, 450, 504.

Furthermore, unlike Dr. Panek's review, Dr. Palasi's review of the record was limited to treatment notes through August 2012, and Dr. Palasi was not subject to cross-examination. Tr. 522. The Court also notes Dr. Palasi's opinion was rendered prior to the alleged onset date, and is thus of limited relevance to the ALJ's disability determination. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Plaintiff fails to identify any medical evidence in the record that undermines the ALJ's conclusion. ECF No. 18 at 17-18. *See Shinseki*,

556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm). Upon reviewing the evidence as a whole, the Court finds substantial evidence supports the ALJ's finding.

The ALJ rejected Dr. Palasi's opinion for not being adequately supported. Tr. 39. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment notes are consistent with the opinion, a check-box form may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17. Here, the ALJ noted Dr. Palasi's opinion consisted of a one-page checkbox form. Tr. 39. There are no treatment notes to support Dr. Palasi's opinion. Furthermore, there is no narrative explanation for the limitations assessed, nor did Dr. Palasi perform any kind of physical examination of Plaintiff to support her opinions. Tr. 522. This was a specific and legitimate reason to discredit Dr. Palasi's opinions.

### 5. Dr. Vu

Dr. Vu reviewed the record and opined on September 11, 2015, that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; could stand and

walk for six hours in an eight-hour workday; could sit for six hours in an eight-hour workday; could push and pull within the lifting weight limits; could not climb ladders, ropes, or scaffolds; could frequently stoop, crouch, kneel, crawl, and balance; should not be exposed to unprotected heights and hazardous equipment; and could frequently reach bilaterally. Tr. 113-18. The ALJ gave this opinion partial weight, rejecting in particular Dr. Vu's opinion that Plaintiff was not limited in reaching. Tr. 38.

Here, Plaintiff contends the ALJ assigned too much weight to Dr. Vu's opinion. An ALJ need not provide reasons for crediting a medical opinion. *See Turner*, 613 F.3d at 1223. Plaintiff argues Dr. Vu's opinion should have been rejected because Dr. Vu did not examine Plaintiff. ECF No. 18 at 17. However, this argument is inconsistent with the Social Security regulations, which consider the opinions of non-examining physicians. *Holohan,* 246 F.3d at 1201-02; *see also* 20 C.F.R. §416.927(c).[2] Plaintiff also argues Dr. Vu's opinion is inconsistent with the medical evidence, but offers no supporting evidence. Plaintiff fails to show

_____

[2] The Court also notes the inconsistency in Plaintiff's argument that Dr. Vu's opinion should be rejected because Dr. Vu did not examine Plaintiff, while arguing that the opinion of Dr. Palasi, a non-examining physician, should have been given more weight. ECF No. 18 at 17.

ORDER - 28

error in the ALJ's evaluation of Dr. Vu's opinion. *See Shinseki*, 556 U.S. at 409-10.

### 6. *Mr. Wills*

Mr. Wills treated Plaintiff on March 12, 2014, and from May 26, 2015 through August 12, 2015. Tr. 610-11, 765-86. On May 26, 2015, Mr. Wills opined Plaintiff was unable to bend forward, rotate sitting, rotate standing, stoop, kneel, crouch, balance, or climb a step ladder; could tolerate only five percent of a workday crawling, squatting, walking, climbing stairs, or balancing; could sit or stand for up to one-third of a workday; could lift or carry up to ten pounds occasionally; could occasionally reach overhead or push/pull with his hands; could occasionally operate foot controls; and could have no exposure to occupational hazards. Tr. 703-08, 766. The ALJ gave this opinion little weight. Tr. 39.

Mr. Wills does not qualify as an acceptable medical source. 20 C.F.R. § 416.902[3] (Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). An ALJ is required to consider evidence

---

[3] Prior to March 27, 2017, the definition of an acceptable medical source was located at 20 C.F.R. § 416.913.

ORDER - 29

from non-acceptable medical sources.  20 C.F.R. § 416.927(f).[4]  An ALJ must give

reasons "germane" to each source in order to discount evidence from non-

acceptable medical sources.  *Ghanim*, 763 F.3d at 1161.

Here, the ALJ found Mr. Wills' opinions were inconsistent with the medical

evidence.  Tr. 39.  Inconsistency with the medical evidence is a germane reason for

rejecting lay witness testimony.  *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236

F.3d 503, 511 (9th Cir. 2001).  The ALJ identified substantial medical evidence in

the record that supports a less restrictive finding than Mr. Wills opined.  Tr. 34-36;

*see, e.g.*, Tr. 612 (negative shoulder imaging), Tr. 668 (imaging shows only mild

disc degeneration), Tr. 760 (swollen shoulder shows no signs of atrophy or carpal

tunnel syndrome).  Furthermore, Plaintiff fails to identify evidence in the record,

other than properly-discredited medical opinion evidence, that undermines the

ALJ's conclusion.  ECF No. 18 at 17.  This was a germane reason to discredit Mr.

Wills' opinions.

*7.  Other Assignments of Error*

Finally, Plaintiff challenges the ALJ's consideration of state agency

consultants Thomas Clifford, Ph.D., Tr. 158-59; Dan Donahue, Ph.D., Tr. 167-68;

_____

[4] Prior to March 27, 2017, the requirement that an ALJ consider evidence from

non-acceptable medical sources was located at 20 C.F.R. § 416.913(d).

ORDER - 30

Dennis Koukol, M.D., Tr. 169-70.  ECF No. 18 at 17-18.  Plaintiff argues these providers' opinions were entitled to no weight, claiming vaguely that these opinions are "outdated."  *Id.* at 17.  Plaintiff fails to develop this argument with more specificity.  *See Carmickle*, 533 F.3d at 1161 n.2 (the Court may decline to address on the merits issues not argued with specificity).  As discussed *supra*, an ALJ need not provide reasons for crediting a medical opinion.  *See Turner*, 613 F.3d at 1223.[5]  Plaintiff fails to establish error.

**C. RFC Formulation and Step Five**

Plaintiff contends the ALJ's step four and step five findings were based on an improper RFC formulation and that Plaintiff should have been limited to sedentary work at most.  ECF No. 18 at 18-20.  Based on this premise, Plaintiff also argues the ALJ should have found Plaintiff disabled under the Medical-Vocational Guidelines at step five of the sequential evaluation.  *Id.* at 20.  However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims.

---

[5] Additionally, the Court notes the inconsistency in Plaintiff's argument that the agency reviewers' opinions, which were rendered after the alleged onset date, are "outdated," while arguing Dr. Palasi's opinion, which was rendered before the alleged onset date, should have been given more weight.

ORDER - 31

*Id.*  For reasons discussed throughout this decision, the ALJ's adverse credibility finding and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence.  Thus, the ALJ did not err in assessing the RFC or finding Plaintiff capable of performing past relevant work at step four. Because the ALJ properly found Plaintiff was capable of light work with additional functional limitations, the ALJ also did not err in failing to find Plaintiff disabled under the Medical-Vocational Guidelines at step five.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 18) is **DENIED.**

2. Defendant's motion for summary judgment (ECF No. 25) is **GRANTED.** The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE** THE FILE.

DATED March 28, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE